IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1998

FILED

September 15, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9708-CR-00343 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | HAMBLEN COUNTY |
| VS. | ) | |
| | ) | HON. JAMES EDWARD BECKNER |
| LARRY WILSON, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Sentencing) |

FOR THE APPELLANT:

P. RICHARD TALLEY
P. O. Box 950
Dandridge, TN  37725

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY C. PATRICK
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0943

BERKELEY BELL
District Attorney General

JOHN DUGGER
Assistant District Attorney
510 Allison Street
Morristown, TN  37814

OPINION FILED _____

MODIFIED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

On March 12, 1997, a Hamblen County jury found Appellant, Larry Wilson, guilty of reckless homicide. The jury imposed a fine of $5,000. After a sentencing hearing, the trial court sentenced Appellant to the maximum penalty of four years incarceration to be served as a Range I standard offender. Appellant appeals from the trial court's sentence, raising two issues:

1) whether the trial court erred in imposing the maximum sentence and in failing to consider applicable mitigating factors, and

2) whether the trial court erred in denying Appellant probation or spilt confinement.

After a review of the record, we modify the judgment of the trial court to reflect a sentence of three years with one year incarceration followed by two years of supervised probation.

## FACTS:

According to testimony presented at trial, Appellant and his brother, Randy Wilson, the victim, had a strained relationship for many years. The victim threatened Appellant's life on many occasions. On the morning of the homicide, around 4:30 in the morning, the victim and his girlfriend, Rocky Ward showed up unannounced at Appellant's door. Appellant allowed the two to sleep in his home until sometime after midday. Appellant testified that the

victim and Ms. Ward appeared to have been under the influence of drugs and alcohol. The pair left the farm around two o'clock with Ms. Ward going sometime in the evening to pick up her son for her summer visitation with him. Randy Wilson returned to the farm late that evening, and Ms. Ward arrived with her fourteen year old son and her five year old daughter to meet him around 11:30.

Randy Wilson was reclining on the porch, and when Ms. Ward arrived, she did not immediately see him. So Ms. Ward went into the shed where Appellant was working and asked him where Randy was. Appellant pointed toward the house. Ms. Ward then got her children out of the car, slamming the car door in the process. When Randy Wilson heard the car door he sat up, and Ms. Ward joined him on the porch.

Randy Wilson and Ms. Ward checked for the key on the porch, and, not finding it, Ms. Ward returned to the shed to ask Appellant for the key. She got no response from Appellant, and returned to the porch without the key. Randy Wilson then stated that he would get the key and went to the shed. A few seconds after Randy Wilson entered the shed, Appellant shot him. Randy Wilson turned to leave the shed, holding his stomach, and Appellant followed him out of the shed, shooting him in the back. Ms. Ward and her two children fled the property, hearing a third shot as they ran. Ms. Ward flagged down a car which took her to call the authorities.

The victim's body was recovered at the scene with three gunshot wounds to the body (and an additional wound to the hand which could have

been from the same shot as one of the wounds to the body): one shot to the chest which crossed through the chest wall and the top of the victim's liver, another shot to the abdomen which went through the top of the left kidney, injured the spleen and passed through the victim's stomach, and a third shot which entered high under the victim's jaw and exited just below his ear, severing the carotid artery. According to medical testimony at trial, either of the first two wounds would have been fatal had the victim received extensive medical care within thirty minutes of receiving either wound. The third shot caused death instantaneously.

Appellant initially denied killing his brother, but eventually signed a statement admitting to shooting Randy Wilson after his brother threatened to "blow his brains out" if he did not give the victim the key to his house. Appellant was afraid of the victim as a result of the victim's prior threats to kill him and felt that, if he did not protect himself, the victim would shoot him. Appellant further testified that when the victim turned to leave the shed, he feared that the victim would retrieve a gun from his car and return to kill him. Though the victim was unarmed at the time of the shooting, undisputed testimony was presented that the victim always carried a gun, usually wore a bullet proof-vest, and had a reputation for violence.

**I. Length of Sentence**

Appellant argues that the trial court erred in imposing the maximum sentence for this crime. When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn.

Code Ann. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all the relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Sentencing Reform Act of 1989 established specific procedures which must be followed in sentencing. These procedures, codified at Tenn. Code Ann. § 40-35-210, mandated the court's consideration of the following:

> (1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40-35-210.

This section further provides that the minimum sentence within the range is the presumptive sentence. The court must begin with the minimum sentence and enhance that sentence to appropriately reflect any statutory enhancement factors that the court finds to be present. After enhancing the sentence, the court must reduce the sentence giving consideration to the weight of any mitigating factors that the court finds. The weight to be given each factor is left to the discretion of the trial judge. State v. Shelton, 854

S.W.2d 116, 123 (Tenn. Crim. App. 1992). Because we find the trial court erred in rejecting a number of applicable mitigating factors out of hand, our review of the sentence in this case is purely de novo.

Having been convicted of a Class D felony as a Range I standard offender Appellant is subject to a minimum sentence of two years and a maximum sentence of four years. The trial court found that two enhancement factors were applicable, i.e., Appellant treated Randy Wilson with exceptional cruelty, Tenn. Code Ann. Sec. 40-35-114(5), and Appellant used a firearm in the commission of the offense, Tenn. Code Ann. Sec. 40-35-114(9). The trial court declined to find that any of the mitigating factors offered by Appellant were applicable to the case. It is from the refusal on the part of the trial court to apply any of these mitigating factors that Appellant appeals.

Appellant urged the trial court to apply the following mitigating factors to his sentence:

> (2) the defendant acted under strong provocation;
>
> (3) substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense.
>
> (8) the defendant was suffering from a mental or physical condition that significantly reduced culpability for the offense; and
>
> (11) the defendant, although guilty of the crime, committed the offense under such unusual circumstances that is unlikely that a sustained intent to violate the law motivated the conduct.

Tenn. Code Ann. § 40-35-113.

We will address the applicability of each factor in turn.

Strong Provocation.

The evidence in this record is undisputed that Appellant was a peaceful man who had never been in trouble before in his life. Likewise it is uncontradicted that Randy Wilson was a violent man who wore a bullet proof vest and went armed virtually all the time. Randy Wilson had intimidated his brother, the Appellant, for years through threats and belligerent behavior. Indeed the mother of both Appellant and Randy Wilson testified that the latter was so violent she was scared of him and actually slept with a baseball bat to protect herself from her own son. Appellant testified that at the time of the shooting his brother threatened to kill him as he had many times previously.

It is obvious the jury believed that Appellant acted under some degree of provocation that reduced his culpability for the homicide. Although originally indicted for second degree murder, i.e. a "knowing" killing the jury found Appellant guilty of only the "reckless" killing of Randy Wilson. We believe that under the circumstances the trial court should have found that Appellant when he shot Randy Wilson was acting under strong provocation.

Substantial Grounds Exist Which Tend to Excuse Appellant's Conduct.

From its verdict it is clear that the jury rejected the notion that Appellant acted in a manner which would constitute the complete defense of self defense thereby excusing Appellant from criminal responsibility altogether.

However, for the reasons stated in the preceding section it is also clear that the jury did not believe Appellant to be guilty of a murder or any intentional homicide. Since Appellant admitted shooting his brother repeatedly we are left to conclude that the jury must have believed that Randy Wilson's previous threats and his reputation for violence and going armed tended to excuse the Appellant's conduct.[1] From the record we agree and find the trial court should have applied this mitigating factor to Appellant's sentence.

Appellant's Mental Condition.

Expert testimony established that Appellant had a low I.Q. although he was not retarded. He also suffered from a form of post-traumatic stress syndrome. However, Appellant was a fully functioning individual who ran a farm, dated, and took care of his elderly aunt. He had never been treated for mental or emotional problems. Under these circumstances the trial court did not err in rejecting this mitigating factor.

Sustained Intent to Violate the Law.

The uncontradicted proof in the record revealed that Appellant is a peaceful man who has never crossed paths with the law prior to this incident. By all accounts he led a quiet life on his family farm where he cared for an elderly aunt. Again, it is apparent from its verdict that the jury found the killing of Randy Wilson to be at most an isolated act motivated by fear and

[1]The trial judge in rejecting this mitigating factor indicated that the jury's having apparently taken this factor into account in reaching its verdict precluded him from considering it. We know of no case or statute which mandates such a conclusion.

-8-

intimidation. We find that Appellant's actions were not motivated by a sustained intent to violate the law. This factor should have been applied to Appellant's sentence.

In summary is it the opinion of this Court that mitigating factors (2), (3) and (11) apply to the sentence in this case. In balancing these factors against the substantial weight accorded by the trial court to the applicable enhancement factors we modify the sentence of four years to one of three years in length.

**II. Alternative Sentencing**

Appellant further challenges the trial court's order that he serve the entirety of his sentence in confinement. The Sentencing Reform Act requires the trial court to begin its consideration with the presumption that the appellant is subject to alternative sentencing if he meets the requirements of Tennessee Code Annotated § 40-35-102(6), which requires that the appellant not fall under Tennessee Code Annotated § 40-35-102(5) and that he receives a sentence of less than eight years. This means that the defendant must be a standard or mitigated offender, convicted of a Class C, D, or E felony who cannot have a criminal history evincing either "clear disregard for the laws and morals of society" or "failure of past efforts at rehabilitation." Tenn. Code Ann. § 40-35-102(5). Appellant clearly falls within the parameters of the

presumption that he is entitled to a sentence other than continuous confinement.

The presumption that Appellant is a candidate for alternative sentencing does not settle the matter. This presumption may be rebutted by "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated § 40-35-103 gives guidance as to what may be considered in making this determination:

> (1) Sentences involving confinement should be based on the following considerations:
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this case, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense. The trial court specifically based the sentence of continuous incarceration upon the lawlessness of society saying, "so what should the message be?". In my opinion, probation would say that it's okay to go back to lawlessness in a time when violence causes all of us to live in fear. What we need more of, folks, is just plain old law and order, and then if you kill someone and it's not in self-defense, and you know what you're doing, and you do it cruelly, you go to jail. Those are hard words, but they're true. So that's the message."

We agree with the trial court that this case is serious and that some incarceration is necessary to avoid depreciating this fact. However, Tenn. Code Ann. Sec. 40-35-103(4) cautions us that:

> The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed.

The homicide in this case is not only serious, as is any homicide, but it is also tragic. Here one otherwise law abiding brother is apparently driven to kill his violent sibling through threats and intimidation meted out by the latter for the better part of a lifetime. As stated previously, although Appellant cannot and should not be completely relieved of criminal responsibility for his actions, a sentence of continuous confinement in the penitentiary does not appear to be the least severe measure necessary to avoid depreciating the seriousness of the offense. It is our opinion that pursuant to Tenn. Code Ann. Sec. 40-35-306, Appellant should serve a sentence of one year in the county jail or workhouse followed by a period of two years supervised probation upon such terms and conditions as the trial court may deem appropriate.

The judgment of the trial court is modified to reflect a sentence of three years to be served as set forth hereinabove. This case is remanded to the trial court for further proceedings consistent with this opinion.

_____
JERRY L. SMITH, JUDGE

CONCUR:

-12-

_____
THOMAS T. WOODALL, JUDGE


_____
WILLIAM B. ACREE, SPECIAL JUDGE